UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ATHENA W.,

          Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

20-CV-01831-MJR

DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13)

Plaintiff Athena W.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 9) is denied, and defendant's motion (Dkt. No. 11) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on November 28, 2017, and later amended her alleged onset date to November 28, 2017. (Administrative Transcript ["Tr."] 13, 401-13). The application was initially denied on April 17, 2018. (Tr. 13, 337-48). Plaintiff timely filed a request for an administrative hearing. (Tr. 13, 349-51). On October 21, 2019, Administrative Law Judge ("ALJ") Jonathan P. Baird held a video hearing from Lawrence, Massachusetts. (Tr. 266-302). Plaintiff appeared in Buffalo, New York, with counsel. A vocational expert also appeared and testified at the hearing. The ALJ issued an unfavorable decision on February 11, 2020. (Tr. 10-28). On October 26, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7). This action followed.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

    II.    <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

    III.    *The ALJ's Decision*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 28, 2017, the application date. (Tr. 15). At step two, the ALJ found that Plaintiff had the following severe impairments: post-traumatic stress disorder ("PTSD"); anxiety disorder; opiate dependence; panic disorder; bipolar II disorder; attention-deficit hyperactivity disorder; and polysubstance abuse. (Tr. 16). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-18). Prior to proceeding to step four, the ALJ determined that Plaintiff had the following RFC:

> [C]laimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to frequent fingering and handling. The claimant is limited to simple, routine, and repetitive tasks. The claimant cannot understand, remember, or carry out detailed instructions. The claimant is limited to low stress work, defined as occasional decision-making required and occasional changes in work setting. The claimant cannot perform production rate or pace work. The claimant is limited to occasional interaction with coworkers and the public.

(Tr. 18-22).

At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 22). At step five, the ALJ found that there exist jobs in significant numbers in the national economy that Plaintiff can perform. (Tr. 23-24). Therefore, the ALJ found that Plaintiff was not disabled since November 28, 2017, the application date. (Tr. 24).

IV. *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded because the ALJ improperly engaged in "cherry picking" of the medical opinion evidence in formulating the Plaintiff's RFC. The Court disagrees.

Contrary to Plaintiff's assertions, the ALJ did not "cherry pick" the evidence by finding the opinion of the consultative examining psychologist, Dr. Ippolito, partially persuasive, nor did the ALJ improperly elevate the opinions of the State medical consultants over that of Dr. Ippolito.

Under the new regulations applicable in this case,[3] the ALJ no longer *weighs* the medical opinion evidence, or ranks the evidence in terms of importance. Rather, as is the case here, the ALJ simply assesses the persuasiveness of the opinion evidence by determining how well supported and consistent the medical evidence is in relation to the overall record. Here, the ALJ acted in accordance with the applicable regulations; he analyzed Dr. Ippolito's opinion and found that Dr. Ippolito's report was internally inconsistent and not entirely supported by the record evidence. (Tr. 21 *citing* Tr. 632-636). For instance, in assessing supportability, the ALJ documented that Dr. Ippolito observed Plaintiff's attention and concentration were impaired due to distractibility (and assessed moderate limitations), yet the report indicated she could perform serial 3

---

[3] The parties are presumed to be familiar with the applicable regulations.

calculations, had coherent thought process, her memory, insight, and judgment were fair, and intellectual functioning was average. (Tr. 21, 635). Nevertheless, the ALJ's decision acknowledged Plaintiff's *moderate* limitations in attention and concentration, and accounted for this limitation by limiting her to no more than simple, routine, repetitive, low stress work, with no production rates or pace. (Tr. 17 (ALJ finding Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace); Tr. 18 (RFC limiting Plaintiff to simple, routine, low stress work with no production quotas or pace); Tr. 636 (Dr. Ippolito opining Plaintiff had moderate limitations in concentration and pace but was capable of performing simple directions and instruction and use reason and judgment to make work-related decisions)); *McIntyre*, 758 F.3d at 150 (finding substantial evidence – including consultative examiner's opinion that McIntyre could relate to and interact moderately with others – supported ALJ's RFC finding for "simple, routine, low stress tasks," which was not inconsistent with ALJ's step three finding of moderate difficulties in social functioning and concentration, persistence, and pace).

The ALJ also noted when assessing the consistency of the report, that while Dr. Ippolito found *marked* limitations in interacting with others, she observed that Plaintiff was repeatedly cooperative with her providers, had a boyfriend, interacted with her friends regularly, and used public transportation; factors each of which are contrary to the *marked* social limitation Dr. Ippolito ultimately assessed. (Tr. 17; Tr. 21; Tr. 280-281 (Plaintiff's testimony regarding her close friendships and relationships); Tr. 635 (Plaintiff reporting she used public transportation); Tr. 636 (Plaintiff reporting to Dr. Ippolito that she has friends and interacts with them regularly); Tr. 51, 634, 744 (treatment notes characterizing Plaintiff as pleasant and cooperative)). Although the ALJ did not find this portion of Dr.

Ippolito's opinion persuasive due to its inconsistency, he nevertheless accounted for Plaintiff's social limitations by limiting her to simple, low-stress work, with no more than occasional interaction with others. (Tr. 17); *See Ward v. Comm'r of* Soc. Sec., No. 18-CV-1317-FPG, 2020 WL 3035850, at *3 (W.D.N.Y. June 5, 2020) ("[M]any courts have found that where, as here, an ALJ properly gave considerable weight to a medical opinion stating a claimant's ability to handle brief and superficial contact, an RFC containing a limitation to "occasional interaction" is supported by substantial evidence.") (collecting cases); *Gomez v. Commissioner Of Social Security*, No. 18-CV-96-FPG, 2020 WL 1322565, at 4–5 (W.D.N.Y. Mar. 20, 2020) (finding moderate to marked limitation in dealing with stress accounted for in RFC limiting plaintiff to simple routine tasks); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-6804P, 2019 WL 1870814, at 4 (W.D.N.Y. Apr. 26, 2019) (finding marked limitations in interacting with others accounted for by limiting plaintiff to "tasks that do not require working in conjunction with others and predominately involve working with objects rather than people."); *Fiducia v. Comm'r of Soc. Sec.*, 2015 WL 4078192 at 4 (N.D.N.Y. July 2, 2015) (rejecting plaintiff's argument that she was unable to work due to doctors' opinion that she had marked limitations with respect to interacting appropriately with the public, with supervisors, and with coworkers; "[t]he fact that plaintiff was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work, particularly given the fact that the ALJ limited plaintiff to work that does not require more than occasional interaction with the public and co-workers").

Contrary to Plaintiff's argument, finding an opinion partially persuasive does not constitute a rejection or a "discredit[ation]" of the opinion, nor is the ALJ required to adopt

the entirety of the opinion into the RFC. *Barry v. Colvin*, 606 F. App' x 621, 624 (2d Cir. 2015) (ALJ's RFC finding need not include every limitation assessed by a consultative examiner, and ALJ could, instead, exercise discretion in reviewing the record evidence in its totality); *Younes v. Colvin*, 2015 WL 1524417, at 8 (N.D.N.Y. April 2, 2015). Here, Dr. Ippolito's opinion was only partially persuasive, finding that while Plaintiff was limited in her ability to interact socially as well as in her concentration, she could otherwise understand and remember simple instructions and directions, perform tasks, use reason and judgment to make work-related decisions. (Tr. 22, Tr. 636). Although finding this opinion only partially persuasive, the ALJ nevertheless incorporated much of the opinion's findings into the RFC by limiting Plaintiff to simple, low stress, unskilled work, with no production rate or pace, and no more than occasional interaction with others, and found the more restrictive portions of the opinion inconsistent and/or unsupported by the record as a whole. (*See* Tr. 18); *Pellam*, 508 F. App' x at 90 (consultative examiner's opinion largely supported ALJ's RFC determination even if ALJ did not credit all of the consultant's findings).

Moreover, the ALJ's RFC determination was not based simply on Dr. Ippolito's opinion, but on the totality of the evidence, including the prior administrative finding of Dr. Bruni, the State agency psychological consultant, whom the ALJ found persuasive. (*See* Tr.22, 327-328, 330-332). Dr. Bruni reviewed the medical evidence (including Dr. Ippolito's report) and found that Plaintiff had no more than moderate limitations in any one area (including social interaction) and was capable of performing semi-skilled tasks in a low contact setting. (Tr. 328-332). The ALJ found this opinion persuasive and explained that Dr. Bruni's finding was supported by, and consistent with, the other record evidence

including the fact that Plaintiff testified she enjoyed reading as a hobby, was capable of driving her car, and was capable of performing all her daily living activities. (*See* Tr. 22 (ALJ assessing consistency and supportability of Dr. Bruni's opinion). Thus, the ALJ's review of the record evinces a level of functionality consistent with Dr. Bruni's opinion that she could perform semi-skilled tasks, and also consistent with the RFC limiting her to simple, routine, and repetitive work. (Tr. 18). Moreover, Dr. Bruni's opinion that Plaintiff had no more than moderate limitations in concentration (just as Dr. Ippolito opined) was also consistent with and supported by Plaintiff's treatment notes which reflected intact cognition, intact memory, fair insight and judgment, organized thought process, and normal attention. (*See* Tr. 22; Tr. 649, 722, 751, 754, 773, 776). Similarly, Dr. Bruni's opinion that Plaintiff had no more that moderate social limitations and should work in low contact with the public is further supported by Plaintiff's own statements regarding her sociability. Plaintiff reported she had friends and interacted with them regularly (Tr. 39, 636) including attending a friend's music show (Tr. 54), and she testified she had a network of older female friends who counseled her and provided advice. (Tr. 280). Plaintiff also testified she lived with her boyfriend and his father (Tr. 274) and could take public transportation and shop in public (Tr. 286, 635, 666 (Plaintiff using bus)).

      Plaintiff has failed to show, as is her burden, that her RFC warrants additional mental limitations. Indeed, multiple courts have held that moderate mental limitations are adequately addressed by RFC limitations identical or similar to those found by the ALJ here, and that marked limitations in social interaction can be satisfied by limiting the individual to no more than occasional interaction with others. *See Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (finding ALJ's RFC for simple tasks in a low-stress

environment was supported by doctor's opinion that plaintiff was only mildly and moderately impaired by his depression and anxiety); *McIntyre*, 758 F.3d at 150 ((finding substantial evidence – including consultative examiner's opinion that McIntyre could relate to and interact moderately with others – supported ALJ's RFC finding for "simple, routine, low stress tasks," which was not inconsistent with ALJ's step three finding of moderate difficulties in social functioning and concentration, persistence, and pace); *Richard B. v. Comm'r of Soc. Sec.*, 20-CV-00585, 2021 WL 4316908 at 8 (W.D.N.Y. Sept. 23, 2021) (Consistent with marked limitations in interacting with others, "the ALJ limited plaintiff to only occasional interaction with supervisors, co-workers, and the public. This assessment was not in error."); *Hintsa N. v. Comm'r of Soc. Sec.*, 20-CV-6335-FPG, 2021 WL 3615704, at *2 (W.D.N.Y. Aug. 16, 2021) ("The ALJ properly accounted for Plaintiff's moderate limitations in sustaining concentration and performing tasks at consistent pace, by limiting Plaintiff to 'simple, routine, repetitive tasks'. Courts in this District routinely conclude that an ALJ's 'directive that plaintiff is limited to performing simple, routine tasks accommodates [a medical professional's] finding that plaintiff is moderately limited in concentration, persistence, and pace.'") (collecting cases).

Contrary to Plaintiff's assertions that the ALJ failed to provide a "narrative bridge" between Dr. Ippolito's opinion of marked social limitations and the RFC and thus based the RFC on the ALJ's own "lay interpretation of the medical evidence," the decision makes clear that the ALJ based the RFC on Plaintiff's daily living activities and treatment notes, as well as Dr. Ippolito's and Dr. Bruni's opinions. (Tr. 18-22).

As noted above, each of these opinions are consistent with the RFC, which limited Plaintiff to simple, routine, repetitive, and low stress work, with no more than occasional

interaction with others. (Tr. 18); *Uplinger v. Berryhill*, No. 18-CV-481, 2019 WL 4673437, at 7 (W.D.N.Y. Sept. 25, 2019) ("Marked limitations in mental functioning, including a marked limitation in ability to deal with stress, do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements."). Thus, Plaintiff fails to satisfy her burden of introducing evidence demonstrating that she was unable to perform work commensurate with the ALJ's RFC finding. *See Reynolds v. Colvin*, 570 Fed. App'x 45, 47 (2d Cir. 2014) ("A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *Dumas v. Schweiker,* 712 F.2d 1545, 1553 (2d Cir. 1983) ("[t]he [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say.").

Finally, Plaintiff's argument that the ALJ should have incorporated additional limitations with respect to social interaction is irrelevant and would not change the outcome of the ALJ's determination. At the hearing, Plaintiff's counsel explicitly asked the vocational expert "if we also change the hypothetical to the claimant having no interaction with the general public, would that change your testimony at all?" (Tr. 301). To which, the vocational expert responded that it would have no impact on Plaintiff's ability to find jobs in the national economy. (Tr. 301).

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is denied and defendant's motion for judgment on the pleadings (Dkt. No.11) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   February 27, 2023
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge